United States District Court
Southern District of Texas
ENTERED
October 01, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BASEL MUSHARBASH, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-00116 |
| | § | |
| U.S. ANESTHESIA PARTNERS, INC., *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

# ORDER

Before the Court are Plaintiff Christy Burbage's ("Plaintiff") First Amended Class Action Complaint (the "FAC") (Doc. #114)[1]; Defendants U.S. Anesthesia Partners Holdings, Inc. ("Holdings"), U.S. Anesthesia Partners of Texas, P.A. ("Texas P.A."), and U.S. Anesthesia Partners, Inc.'s ("USAP") (collectively, "Defendants") Motion to Dismiss the FAC (the "Motion to Dismiss") (Doc. #130); Plaintiff's Opposition to Defendants' Motion to Dismiss (the "Response") (Doc. #134)[2]; and Defendants' Reply in Support of Motion to Dismiss (the "Reply") (Doc. #143). Having considered the parties' arguments and the applicable legal authority, the Court grants the Motion to Dismiss in part.

## I. Background

### a. Factual Background

This putative class action is one of several private suits that followed the Federal Trade

---

[1] Plaintiff filed an unsealed, redacted version of her Amended Complaint. Doc. #116. However, in this Order, the Court cites to the sealed, redacted version. Doc. #114.

[2] The Court notes that Plaintiff filed an unsealed, redacted version of her Response. Doc. #135. In this Order, the Court cites to the sealed, unredacted version of the Response. Doc. #134.

Commission's ("FTC") challenge to Defendants' alleged scheme to monopolize hospital anesthesia services in Texas. The Court described the alleged scheme at length in related litigation, incorporates that description here, and summarizes below only the facts necessary to resolve the Motion to Dismiss. *See Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, No. 4:23-CV-04398, 2024 WL 5274650, at *1-3 (S.D. Tex. Sept. 27, 2024).

In brief, Plaintiff alleges that USAP was formed in 2012 with the backing of the private equity firm Welsh Carson and that, beginning that year, Defendants acquired sixteen anesthesia practices across Texas—including the dominant providers in Houston, Dallas-Fort Worth, and Austin—and raised reimbursement rates after each acquisition. Doc. #114 at 6-9. Plaintiff further alleges that, where Defendants could not acquire a competitor, they entered into price-fixing agreements with at least three anesthesia groups: Methodist Hospital Physician Organization, Dallas Anesthesiology Associates, and Baylor College of Medicine's anesthesiologist group. *Id.* at 9. Plaintiff also alleges that USAP agreed with another group to allocate markets. *Id.*

Plaintiff, a Texas citizen, alleges that, during the class period, she paid Defendants $916.55 for anesthesia services provided at Texas Health Presbyterian Hospital Plano. *Id.* at 10. She alleges that she paid more than she otherwise would have because of USAP's anticompetitive conduct. *Id.* at 9, 97. The FAC names USAP, Holdings, Texas, P.A, and Welsh Carson as Defendants.[3] *Id.* at 10-17. USAP is a Delaware corporation with its principal place of business in Dallas. *Id.* at 10-11. Holdings, also a Delaware corporation, is USAP's ultimate corporate parent and owns it through a chain of intermediate holding entities. *Id.* at 12-14. Texas P.A. is a Texas

[3] In an Order issued on August 25, 2025, the Court dismissed with prejudice all claims alleged against Welsh, Carson, Anderson & Stowe XI, L.P.; WCAS Associates XI, LLC; Welsh, Carson, Anderson & Stowe XII, L.P.; WCAS Associates XII, LLC; WCAS Management Corporation; WCAS Management, L.P.; and WCAS Management, LLC (collectively, "Welsh Carson"). Doc. #90.

professional association that Plaintiff describes as an affiliated practice group under Holdings' corporate umbrella. *Id.* at 11; Doc. #130 at 8. Plaintiff alleges that USAP, Holdings, and Texas P.A. "functioned as a single entity" with respect to the challenged conduct.[4] Doc. #114 at 14.

Plaintiff alleges two product markets. The first—the market for "hospital-only anesthesia services"—is the market alleged by the FTC, the original named plaintiff in this case, and by the plaintiffs in *Electrical Medical Trust*. *Id.* at 36-41. The second is new: Plaintiff alleges that Defendants have attempted to monopolize the "related but distinct market for anesthesia services provided at ambulatory surgery centers ('ASCs'), specialized clinics, and similar non-hospital locations" (the "ASC-based market"). *Id.* at 41-42. Plaintiff further alleges that hospital-only anesthesia services "are not interchangeable with those administered outside of a hospital," and that Defendants have increased their share of and pricing power in the ASC-based market through acquisitions of ASC-focused providers and "through leveraging [their] hospital-only market power to charge unlawfully inflated prices to patients receiving anesthesia at ASCs." *Id.* at 36, 44.

Plaintiff seeks to represent two classes. The "First Class," defined "[a]s to Counts I, III, and V," consists of "all natural persons who directly paid all or part of the cost of hospital-only anesthesia services provided by [Defendants] or [their] co-conspirators in Texas" since September 21, 2019. *Id.* at 92. The "Second Class," defined "[a]s to Counts II, IV, and VI," consists of "all natural persons who directly paid all or part of the cost of hospital-only or ASC-based anesthesia services" provided by Defendants during the same period. *Id.* at 93.

**b. The Related Actions**

On September 21, 2023, the FTC sued USAP and Welsh Carson in this District before the

---

[4] Plaintiff refers to the three entities collectively as "USAP." Doc. #114 at 14. Because the FAC's collective use of that label is at issue, the Court uses "USAP" to refer only to U.S. Anesthesia Partners, Inc., and "Defendants" to refer to all three entities.

Honorable Kenneth M. Hoyt. *See Fed. Trade Comm'n v. U.S. Anesthesia Partners, Inc.*, No. 4:23-CV-03560 (S.D. Tex.) (the "FTC Action"). The FTC alleges that the "relevant service market appropriately excludes anesthesia services that can be provided outside a hospital setting." Doc. #130 at 4 (quoting FTC Action, Doc. #69). Judge Hoyt granted Welsh Carson's motion to dismiss but denied USAP's motion to dismiss. *Fed. Trade Comm'n v. U.S. Anesthesia Partners, Inc.*, No. 4:23-CV-03560, 2024 WL 2137649, at *9 (S.D. Tex. May 13, 2024).

In November 2023, two self-funded employee benefit plans filed a putative class action against USAP and Welsh Carson before this Court. *Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, No. 4:23-CV-04398, Doc. #216 at 3 (S.D. Tex. Mar. 27, 2026) (the "EMT Order"). On September 27, 2024, the Court dismissed the plaintiffs' claims against Welsh Carson, as well as their conspiracy claim against USAP, holding that Welsh Carson and USAP were incapable of conspiring under *Copperweld Corp. v. Independence Tube Corp*, 467 U.S. 752 (1984). *Elec. Med. Tr. v. U.S. Anesthesia Partners, Inc.*, 2024 WL 5274650, at *1. The *Electrical Medical Trust* plaintiffs later amended their complaint to add Holdings and Texas P.A. as defendants, and those entities moved to dismiss. EMT Order at 3. The Court denied that motion as to Holdings, finding that the plaintiffs had plausibly alleged that Holdings and USAP operated as a single enterprise, and granted it as to Texas P.A., with leave to amend, because the plaintiffs had not sufficiently alleged Texas P.A.'s independent participation in the alleged scheme. *Id.* at 11.

**c. Procedural History**

On January 9, 2025, Basel Musharbash filed this case against USAP and the Welsh Carson defendants on behalf of a putative class of patients. Doc. #1. The Court later dismissed the claims against the Welsh Carson defendants, holding, as it had in *Electrical Medical Trust*, that Welsh Carson and USAP are not capable of conspiring under *Copperweld*. Doc. #90 at 11 n.3. On February 10, 2026, Plaintiff's counsel filed the Amended Complaint, which substitutes Burbage

for Musharbash as the named plaintiff and adds Holdings and Texas P.A. as defendants. Doc. #114 at 1, 10-14.[5] The FAC asserts six claims: (1) monopolization under Section 2 of the Sherman Act ("Section 2") (Count One); (2) unlawful acquisition under Section 7 of the Clayton Act ("Section 7") (Count Two); (3) conspiracy to monopolize under Section 2 (Count Three); (4) attempted monopolization under Section 2 (Count Four); (5) horizontal agreements to fix prices under Section 1 of the Sherman Act ("Section 1") (Count Five); and (6) horizontal agreement to divide markets under Section 1 (Count Six). *Id.* at 96-104. The FAC also adds the ASC-based market allegations and the Second Class, asserting Counts Two, Four, and Six as to both the hospital-only and ASC-based markets. *Id.* at 41-44, 93, 97-100, 103.

On March 20, 2026, Defendants moved to dismiss (1) all claims against Holdings and Texas P.A. for failure to state a claim and impermissible group pleading; (2) Counts Two, Four, and Six, to the extent they rest on the ASC-based market, for lack of standing and as time-barred; and (3) Count Three for failure to state a conspiracy claim as a matter of law. Doc. #130 at 5-20.[6] Plaintiff filed her Response (Doc. #134) on April 17, 2026, and Defendants filed their Reply (Doc. #143) on May 1, 2026.

## II. Legal Standard

Defendants raise their standing challenge under Rule 12(b)(6), but because Article III standing implicates the Court's subject-matter jurisdiction, the Court evaluates that challenge

[5] The FAC retains its allegations against the Welsh Carson defendants "for appellate purposes," acknowledging that the Court previously dismissed those claims. Doc. #114 at 6 n.1. Nothing in this Order disturbs that ruling.

[6] Although the Motion to Dismiss's conclusion asks the Court to dismiss Counts One through Four and Six "in their entirety" and Count Five "insofar as it relates to alleged agreements in Houston," the Motion argues only for dismissal of the claims against Holdings and Texas P.A., Count Three, and the ASC-based portions of Counts Two, Four, and Six. Doc. #130 at 2 n.1, 5-20; *see* Doc. #135 at 16 n.3. The Court declines to grant relief on grounds the Motion does not brief. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010).

under Federal Rule of Civil Procedure 12(b)(1). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (Rule 12(b)(1) governs challenges to subject-matter jurisdiction). The party asserting diversity jurisdiction bears the burden of proof "as to all aspects of jurisdiction." *Harris v. BSI Fin. Servs.*, No. 4:23-CV-01414, 2023 WL 9005671, at *1 (S.D. Tex. Nov. 27, 2023), *report and recommendation adopted*, No. 4:23-CV-01414, 2023 WL 9007255 (S.D. Tex. Dec. 27, 2023). Where, as here, the defendant challenges jurisdiction on the face of the pleadings, the Court accepts the complaint's well-pleaded allegations as true and asks whether they sufficiently allege jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court considers the jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Significantly, a complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell*, 894 F.3d at 622 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In evaluating the complaint, the Court takes "the well-pleaded factual allegations in the complaint as true" but does "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

## III. Analysis

Defendants raise four challenges: (1) Plaintiff lacks Article III standing to pursue claims

based on the ASC-based market; (2) those claims are time-barred; (3) the FAC fails to state a claim against Holdings and Texas P.A.; and (4) Count Three fails as a matter of law. Doc. #130 at 5-20. Because the first challenge is jurisdictional, the Court begins there. *See Ramming*, 281 F.3d at 161 (explaining that a jurisdictional attack should be addressed first).

**a. Standing for Claims Based on the ASC-Based Market**

Defendants argue that Plaintiff lacks Article III standing to pursue Counts Two, Four, and Six, insofar as those counts rest on the ASC-based market, because Plaintiff alleges that she received anesthesia in a hospital and alleges no injury in the ASC-based market. Doc. #130 at 11-12. Plaintiff responds that her injury flows from the same anticompetitive scheme that injured patients at ASCs, and that any mismatch between her and absent members of the Second Class is a question for class certification rather than standing. Doc. #134 at 11-16.

**i. Plaintiff Lacks Standing to Pursue the ASC-Based Claims**

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Standing "is not dispensed in gross"; plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431; *accord Daves v. Dallas Cnty.*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc). These requirements apply with full force to a putative class representatives, who "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted). "After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020).

Plaintiff's principal response is that Defendants' argument belongs at class certification. Doc. #134 at 12-13. The Fifth Circuit has recognized two approaches to the relationship between a named plaintiff's standing and the claims of absent class members. Under the "class certification" approach, the court examines the named plaintiff's individual standing, and "if that is satisfied, any remaining analysis is considered a matter of class certification under Rule 23." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 734 (5th Cir. 2023). Under the "standing" approach, the court compares "the injuries or interests of the named plaintiff with those of the putative class and will hold that the named plaintiff lacks standing for the class claims if his or her harms are not sufficiently analogous to those suffered by the rest of the class." *Id.* Plaintiff relies on the panel opinion in *Wilson v. Centene Management Co.* for the proposition that the Fifth Circuit has adopted the class certification approach. 144 F.4th 780 (5th Cir. 2025); Doc. #134 at 13. But that opinion was withdrawn, and the substituted opinion "continue[s] to decline" to choose between the two approaches. *Wilson v. Centene Mgmt. Co., L.L.C.*, 168 F.4th 217, 230 (5th Cir. 2026). The substituted opinion also confirms that where a class representative's individual standing is in question, "that issue must be addressed before determining whether he has standing to represent the class and deciding class certification." *Id.* at 224. And if the named plaintiff lacks individual standing, "it is unnecessary to address whether the plaintiff has standing to represent the class." *Id.* at 230.

The Court need not choose between the two approaches because Plaintiff lacks standing under either one. The defect here is not a mismatch between Plaintiff's injury and the injuries of absent class members asserting the same claim. It is the absence of any injury to Plaintiff from claims she herself asserts. Counts Two, Four, and Six, insofar as they rest on the ASC-based market, are Plaintiff's own claims—she pleads them in her own name and seeks to recover on them. Doc. #114 at 97-98, 100-104. Whether she has standing to press those claims is therefore

part of the individual-standing inquiry that precedes any Rule 23 analysis under either approach. *See TransUnion*, 594 U.S. at 431 "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (citation omitted); *Wilson*, 168 F.4th at 224. Even the more forgiving class-certification approach defers only the "remaining analysis" to Rule 23, and only after the named plaintiff's individual standing is established. *Angell*, 67 F.4th at 734. Plaintiff's standing to challenge Defendants' conduct in the hospital-only market does not carry over to the ASC-based market. Her claims that Defendants attempted to monopolize the ASC-based market—i.e., made acquisitions that substantially lessened competition in that market, and agreed to divide that market—each target conduct in, and injury to purchasers within, a market in which Plaintiff never purchased. Those claims are therefore distinct from her hospital-only claims, even though she pleads both within the same counts. *See Kjessler*, 2019 WL 3017132, at *5-6 (dismissing lanyard price-fixing claims despite allegations of "a single conspiracy covering all three" products); *see also Okla. L. Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2018 WL 4352836, at *6 (E.D. Tex. Sept. 12, 2018) ("If she does not have individual standing to assert a claim, she may not do so even if she meets the other Rule 23(a) requirements." (citation omitted)).

Plaintiff has not alleged an injury traceable to Defendants' conduct in the ASC-based market. Plaintiff alleges that she paid for anesthesia services at a hospital. Doc. #114 at 10. She does not allege that she ever purchased ASC-based anesthesia services. And by her own account, the ASC-based market is "distinct" from the hospital-only market because hospital-only anesthesia services "are not interchangeable with those administered outside of a hospital." *Id.* at 36, 39, 41-43. The conduct underlying Plaintiff's ASC-based theory—acquisitions of ASC-focused providers and the leveraging of Defendants' hospital-only market power "to charge unlawfully inflated prices to patients receiving anesthesia at ASCs"—injures, on Plaintiff's own theory, the

patients who pay for anesthesia at ASCs. *Id.* at 44-45. Plaintiff is not among them. Whatever overcharge Plaintiff paid at Texas Health Presbyterian Hospital Plano is traceable to Defendants' alleged conduct in the hospital-only market, and her claims based on that market remain. Relief directed at the ASC-based market would not redress that injury.

Plaintiff's contention that her injury flows from "the same overarching course of conduct" does not change the analysis. Doc. #134 at 12. A plaintiff "who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)). Applying that principle, a court in this District dismissed price-fixing claims concerning a product that no named plaintiff had purchased, even though the plaintiffs alleged "a single conspiracy covering all three" products at issue. *Kjessler*, 2019 WL 3017132, at *5-6. The same reasoning applies here. Plaintiff alleges one course of conduct but two markets, and she was a purchaser in only one of them.

The cases on which Plaintiff relies do not suggest otherwise. In *Franklin v. Apple Inc.*, the court permitted the plaintiff to pursue claims concerning iPhone 6 models he did not purchase because all the models allegedly shared the same defect and were subject to the same misrepresentations, and were thus "substantially similar" to the one he purchased. 569 F. Supp. 3d 465, 473-75 (E.D. Tex. 2021). Plaintiff, by contrast, alleges that the two services at issue are not substitutes and occupy distinct markets. Doc. #114 at 36, 41. And in *Williams v. Steward Health Care System, LLC*, the court treated differences between the named plaintiffs and absent class members as a Rule 23 question because the defendant did not dispute the named plaintiffs' standing to bring their own claims, and those plaintiffs asserted "the same claims and resulting injuries" on behalf of the class. No. 5:20CV123-RWS-CMC, 2021 WL 7629734, at *52 & n.15 (E.D. Tex. Dec. 16, 2021), *report and recommendation adopted*, No. 5:20-CV-00123-RWS-CMC,

Doc. #129 (E.D. Tex. Feb. 25, 2022); *see* Doc. #134 at 13-14. For that reason, the *Williams* court found *Kjessler* distinguishable. *Williams*, 2021 WL 7629734, *41-42, *52. This case falls on the *Kjessler* side of that line and thus Plaintiff lacks standing to assert the ASC-based claims.

Finally, Plaintiff's argument that hospital-only and ASC-based anesthesia services are "functionally identical from the patient's perspective," such that "only the facility backdrop" changes, cannot be squared with her FAC which alleges that the two services are not interchangeable and belong to distinct markets. Doc. #134 at 14; Doc. #114 at 36-43. Plaintiff may not amend her pleadings through briefing. *Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 1119411, at *2 (S.D. Tex. Mar. 14, 2024). Nor does USAP's apparent position in the FTC Action that the two services belong to a single market alter what Plaintiff has pleaded here. Doc. #134 at 12 n.1. At this stage, the Court accepts Plaintiff's well-pleaded allegations as true; it does not replace them with USAP's litigating position in another case.

Accordingly, the Court finds that Plaintiff lacks Article III standing to pursue Counts Two, Four, and Six to the extent those counts rest on the ASC-based market. Those claims are dismissed without prejudice. *See Ramming*, 281 F.3d at 161 (explaining that a dismissal for lack of subject-matter jurisdiction "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction"). Counts Two, Four, and Six otherwise remain to the extent they rest on the hospital-only market, which the Motion to Dismiss does not challenge.[7] Doc. #130 at 11-19; Doc. #134 at 16 n.3.

---

[7] Because standing is jurisdictional, the Court notes that Plaintiff's standing to challenge the Houston agreements, which Defendants flag but do not brief, differs from her standing to pursue the ASC-based claims. Doc. #130 at 4, 20. The Houston agreements are alleged to have restrained competition in the same product market in which Plaintiff purchased anesthesia services—the market for hospital-only anesthesia services—and to have increased Defendants' negotiating leverage and rates, including within a Texas-wide geographic market that Plaintiff pleads in the alternative. Doc. #114 at 45, 86-87, 101. That suffices at the pleading stage. *See Texas v. United States*, 50 F.4th 498, 519 (5th Cir. 2022) (traceability requirement is less demanding than

### ii. Leave to Amend

Plaintiff alternatively requests leave to amend, citing Defendants' recent production of documents concerning the ASC-based market and the absence of prejudice to Defendants. Doc. #134 at 15-16. Although courts "should freely give leave when justice so requires," leave may be denied where amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000). The defect here is not a shortage of factual detail that additional discovery could supply. Plaintiff received anesthesia at a hospital, and no amendment can change that fact. Plaintiff does not seek leave to add a class representative who purchased ASC-based anesthesia services, and the Court expresses no view on whether such a request could satisfy Rule 16(b)(4) at this stage of the case. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535-36 (5th Cir. 2003) (holding that Rule 16(b)'s good-cause standard governs amendment of pleadings after a scheduling-order deadline has expired). Plaintiff's request for leave to amend her ASC-based claims is therefore denied.

### b. Timeliness of the ASC-Based Claims

Defendants also argue that the ASC-based claims are time-barred because the FTC Action did not toll the limitations period under 15 U.S.C. § 16(i) for claims arising in a market the FTC expressly excluded. Doc. #130 at 12-19. The parties dispute whether Section 16(i) reaches private claims asserted in a product market different from the one alleged by the government. *Compare Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 321-22 (4th Cir. 2007) (applying the "different-markets rule" and declining to toll claims in a market "neither identical to nor completely encompassed by" the market in the government's suit), *with Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 830-31 (11th Cir. 1999) (holding that where "there is a significant,

---

proximate cause) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)).

although incomplete, overlap of subject matter, the statute is tolled even as to the differences"). The Court does not resolve that dispute. Having concluded that Plaintiff lacks standing to pursue the ASC-based claims, the Court lacks jurisdiction to decide whether those claims are timely. A federal court may not resolve the merits of a claim over which it lacks jurisdiction, and the statute of limitations is an affirmative defense that goes to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 101-02 (1998) (rejecting "hypothetical jurisdiction"); Fed. R. Civ. P. 8(c)(1). The Court therefore does not reach Defendants' timeliness arguments.

**c. Claims Against Holdings and Texas P.A.**

Defendants argue that the FAC impermissibly lumps Holdings and Texas P.A. together with USAP under the collective label "USAP," and fails to allege facts showing that either entity is independently liable. Doc. #130 at 5-10. Plaintiff responds that she proceeds under a single-enterprise theory and that her allegations satisfy the standard the Court applied in the EMT Order. Doc. #134 at 3-11.

**i. The Single-Enterprise Framework**

As the Court explained in the EMT Order, single-enterprise theory implicates *Copperweld*, in which the Supreme Court held that "the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise." 467 U.S. at 771; EMT Order at 4. *Copperweld*, however, "does not supply a theory of unbounded vicarious liability for the acts of legally distinct entities." *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 632 (9th Cir. 2018). Because the Fifth Circuit has not squarely addressed the scope of single-enterprise liability, courts in this Circuit have looked to the Ninth and Tenth Circuits for guidance. EMT Order at 5; *see Chandler v. Phoenix Servs.*, No. 7:19-cv-14, 2020 WL 1848047, at *12 (N.D. Tex. Apr. 13, 2020), *aff'd*, 45 F.4th 807 (5th Cir. 2022). Under that framework, a subsidiary may be held liable "when it acts in coordination with [its] parent." *Arandell*, 900 F.3d at 633. And a

plaintiff asserting Section 2 claims need not prove "that specific [defendants] independently satisfied each necessary element"; rather, the "aggregated conduct" of the enterprise "must be scrutinized." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1236 (10th Cir. 2017); EMT Order at 5. At the same time, a corporation cannot be held liable "merely by virtue of its place in the same corporate family." *Lenox*, 847 F.3d at 1237. At the pleading stage, a plaintiff must instead plausibly allege "that each defendant *independently participated* in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." *Chandler*, 2020 WL 1848047, at *14 (quoting *Lenox*, 847 F.3d at 1237) (emphasis added); EMT Order at 5-6. An enterprise member need not, however, have "participated in each act or transaction." EMT Order at 6-7 (quoting *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 724 (W.D. Tenn. 2022)).

This framework also answers Defendants' reliance on alter-ego principles and the general rule against group pleading. Doc. #130 at 5-8. Plaintiff does not seek to pierce the corporate veil, and the single-enterprise theory operates independently of veil-piercing and alter-ego doctrines. *Lenox*, 847 F.3d at 1237. At the same time, Plaintiff's use of a collective label does not relieve her of the obligation to plead facts showing each entity's independent participation. *Id.*; Doc. #114 at 14. The question, then, is whether the entity-specific allegations in the FAC plausibly allege that Holdings and Texas P.A. each independently participated in the alleged scheme.

**ii. Holdings**

In the EMT Order, the Court held that the plaintiffs plausibly alleged Holdings' independent participation because Holdings—USAP's ultimate parent—"share[s] the same directors, managers, and officers" as USAP, and those common officers "negotiated and implemented" four of the challenged acquisitions. EMT Order at 6-7. Because the acquisitions go "to the very heart of the challenged conduct in this case," Holdings' role in them demonstrated its independent participation in the scheme. *Id.* at 7. The FAC contains materially the same

allegations: Holdings is USAP's ultimate corporate parent and shares its directors and officers who negotiated and carried out the merger agreements, including six to which Holdings was a named party. Doc. #114 at 11-13, 28 n.4, 29 n.5, 32 n.6, 33 nn.7-8, 35 n.9. Two of those acquisitions—Star in September 2019 and Guardian in January 2020—fall within the limitations period, which Defendants do not dispute runs from September 21, 2019 "until the effects of the unlawful conduct alleged herein ceases" as to Plaintiff's hospital-only claims.[8] *Id.* at 33, 35, 58-59, 92; EMT Order at 8 n.3. As the Court explained in the EMT Order, Holdings' independent participation in the scheme during that period renders timely the claims arising from the broader scheme under the continuing-violation exception. EMT Order at 8 n.3 (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982)). Defendants filed their Motion to Dismiss before the EMT Order issued, and their Reply does not argue that the Court should reach a different result as to Holdings here. *See* Doc. #143 at 2-3. For the reasons stated in the EMT Order, the Court finds that the FAC plausibly alleges Holdings' independent participation in the alleged scheme. Accordingly, the Motion to Dismiss is denied as to Holdings.

**iii. Texas P.A.**

Texas P.A. presents a closer question. In the EMT Order, the Court dismissed the claims against Texas P.A. for two reasons. First, the Court expressed discomfort with applying single-enterprise principles to Texas P.A. at all because *Copperweld* addressed "a parent and its wholly owned subsidiary," and Texas P.A.—a Texas professional association—is "a step removed from *Copperweld* and its progeny." EMT Order at 8. Second, and "[m]ore importantly," the complaint

---

[8] Clayton Act claims must be brought within four years after the cause of action accrues, but that period is suspended while a government antitrust action is pending and for one year thereafter as to claims "based in whole or in part on any matter complained of" in that action. 15 U.S.C. §§ 15b, 16(i). September 21, 2019 is four years before the FTC filed the FTC Action, which challenges only the hospital-only market. Doc. #114 at 92.

there did not adequately allege Texas P.A.'s independent participation in the alleged scheme. *Id.* at 8-9. Texas P.A. was alleged only to be "a party" to four merger agreements, not to have negotiated or implemented them, and being a party to those agreements "is not enough—in and of itself—to subject it to potential antitrust liability." *Id.* at 9. And the complaint's allegation that Texas P.A. had "entered at least some contracts with commercial payors" was conclusory: it did not identify any of the contracts or clarify whether Texas P.A. used "negotiating leverage" to raise reimbursement prices. *Id.* The Court therefore concluded that the complaint impermissibly "lump[ed] [Texas P.A.] together" with Holdings and USAP "without sufficient detail." *Id.* (quoting *FTC v. Syngenta Crop Prot. AG*, 711 F. Supp. 3d 545, 585 (M.D.N.C. 2024)).

The Court's reservation about extending single-enterprise principles to a professional association applies equally here, but it does not warrant dismissal at the pleading stage. Plaintiff alleges that Texas P.A. is an affiliated practice group under Holdings' corporate umbrella and that it does business as Greater Houston Anesthesiology, the practice that served as the platform into which Defendants folded their Houston acquisitions. Doc. #114 at 11, 46-47, 86. Plaintiff further alleges that Defendants functioned as a single entity with respect to the challenged conduct. *Id.* at 14. Whether affiliated entities form a single enterprise turns on substance rather than form: "the question is not whether the defendant is a legally single entity or has a single name," but whether the challenged conduct "joins together separate decisionmakers." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010).

Taking Plaintiff's allegations as true, Texas P.A.'s status as a professional association does not by itself place it outside the enterprise. Whether Texas P.A. in fact shares a single center of decision-making with USAP and Holdings—including how its ownership and control are structured—is a question better resolved on a developed record. *See* Doc. #134 at 5. Moreover, to the extent Texas P.A. is not part of the enterprise, the Baylor allegations discussed below

describe Texas P.A.'s own agreement with a competitor, which would be assessed as Texas P.A.'s own conduct under Section 1. *See Am. Needle*, 560 U.S. at 195 (Section 1 reaches concerted action that "joins together separate decisionmakers"). The dispositive question, then, is the one on which the EMT Order ultimately turned: whether the FAC adequately alleges Texas P.A.'s independent participation in the alleged scheme.

Two of the three sets of allegations on which Plaintiff relies do not cure the deficiencies the EMT Order identified. The allegation that Texas P.A. owns five of the acquired practices adds little. Doc. #114 at 11. Defendants represent that the *Electrical Medical Trust* amended complaint contained the same allegation. Doc. #143 at 2. Ownership of acquired practices, without more, reflects Texas P.A.'s "place in the same corporate family" rather than its participation in the scheme. *Lenox*, 847 F.3d at 1237. And alleging that Texas P.A. was a named party to six merger agreements rather than four, adds to the number of agreements Texas P.A. signed, not to the nature of its participation. Doc. #114 at 28 n.4, 29 n.5, 32 n.6, 33 nn.7-8, 35 n.9. Like the complaint in *Electrical Medical Trust*, the FAC here does not allege that Texas P.A. negotiated or implemented any of those agreements. *See* EMT Order at 9 ("That Texas P.A. is a party to merger agreements is not enough—in and of itself—to subject it to potential antitrust liability.").

The Baylor allegations are different. The FAC alleges that on October 23, 2014, "USAP, through its affiliate USAP Texas (d/b/a Greater Houston Anesthesiology), and Baylor College of Medicine entered into an 'Anesthesia Services Collaboration Agreement.'" Doc. #114 at 86. At the time, the Baylor College of Medicine anesthesia group was the second largest in Houston by procedure volume and competed directly with Defendants. *Id.* at 85-86. Under the agreement, Baylor physicians provided anesthesia services at Baylor St. Luke's, and "USAP" billed for those services "as if it were the provider," charged its higher rates, and "received all resulting payments." *Id.* at 86. The agreement remained in effect until 2020, and allegedly enabled Defendants to build

a more substantial presence in an important Houston hospital system, "growing its negotiating leverage with insurers and cementing USAP's monopoly power." *Id.* at 86-87. Although the FAC's description of the agreement reverts to the collective "USAP" label after identifying Texas P.A. as the contracting party, the reasonable inference—which the Court must draw in Plaintiff's favor at this stage—is that Texas P.A., the only Defendant alleged to be a party to the agreement and the entity doing business as Greater Houston Anesthesiology, is the entity that billed and collected under it.

These allegations cure the deficiencies the EMT Order identified in the payor-contract allegations. Unlike the unidentified "contracts with commercial payors" alleged in *Electrical Medical Trust*, the FAC identifies a specific agreement, counterparty, date, and pricing mechanism, and it attributes the agreement to Texas P.A. rather than to "USAP" collectively. EMT Order at 9. And unlike the bare allegation that Texas P.A. was "a party" to merger agreements, the Baylor allegations describe what Texas P.A. did: it implemented the agreement by billing a competitor's services at its own higher contracted rates and collecting the proceeds, thereby raising the prices paid for those services. Doc. #114 at 86. That is precisely the kind of allegation the EMT Order found missing—that Texas P.A. itself acted to raise the prices that payors and patients paid. *See* EMT Order at 9. The FAC therefore does not lump Texas P.A. together with its affiliates "without sufficient detail." *See* EMT Order at 9 (quoting *Syngenta*, 711 F. Supp. 3d at 585). And the conduct is alleged to have continued into 2020, within the undisputed limitations period that applies to Plaintiff's hospital-only claims. Doc. #114 at 58-59, 87; EMT Order at 8 n.3.

Defendants respond that the Baylor allegation, at most, supports Count Five. Doc. #143 at 2. The Court disagrees. The FAC alleges that the Baylor agreement was not only a horizontal price-fixing arrangement but also a means by which Defendants expanded their presence at a key Houston hospital system and strengthened the negotiating leverage on which their alleged

monopoly power rests. Doc. #114 at 87. And on Plaintiff's Section 2 claims, the question is whether Texas P.A. independently participated in the enterprise's scheme. An enterprise member need not have "participated in each act or transaction" because it is the enterprise's "aggregated conduct" that "must be scrutinized under § 2." EMT Order at 6-7 (quoting *Jones*, 618 F. Supp. 3d at 724); *Lenox*, 847 F.3d at 1236. Read together with the allegations that Texas P.A. was a named party to six of the challenged acquisitions and owns five of the acquired practices, the Baylor allegations plausibly allege that Texas P.A. was an active participant in the alleged scheme rather than a passive member of Defendants' corporate family. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (explaining that plaintiffs should be given "the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each"). Whether the evidence supports Texas P.A.'s participation, and for which counts, is a question for summary judgment. The Motion to Dismiss is therefore denied as to Texas P.A., and Plaintiff's alternative request for leave to amend is denied as moot.

**d. Count Three**

Finally, Defendants move to dismiss Count Three, which alleges a conspiracy to monopolize between Defendants and Welsh Carson. Doc. #130 at 19-20. Plaintiff's response does not address this argument, and Plaintiff has therefore abandoned the claim. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that a plaintiff abandoned a claim by failing to defend it in response to a motion to dismiss). The claim also fails on its merits. The Court has already held that Welsh Carson and USAP cannot conspire under *Copperweld* because they are not "separate economic actors pursuing separate economic interests." Doc. #90 at 11 n.3. The FAC's allegation that Welsh Carson "has controlled or directed USAP since its founding through the present" confirms rather than undermines that conclusion. Doc. #114 at 16. And because Plaintiff alleges that Defendants functioned as a single entity, the same reasoning

forecloses any alleged conspiracy between Welsh Carson and Holdings or Texas P.A. *Id.* at 14. To the extent Count Three could be read to allege a conspiracy among Defendants themselves, Plaintiff's allegation that Defendants "functioned as a single entity" likewise forecloses a conspiracy among them. *Id.*; *Copperweld*, 467 U.S. at 771. Count Three is therefore dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART. Doc. #130. Count Three is DISMISSED WITH PREJUDICE. Counts Two, Four, and Six are DISMISSED WITHOUT PREJUDICE for lack of standing to the extent they rest on the alleged market for ASC-based anesthesia services, and Plaintiff's request for leave to amend those claims is DENIED. The Court does not reach Defendants' argument that those claims are time-barred.

The Motion to Dismiss is DENIED as to Holdings and Texas P.A., and Plaintiff's alternative request for leave to amend her allegations against Texas P.A. is DENIED AS MOOT. The Motion to Dismiss is otherwise DENIED. Plaintiff's claims for monopolization (Count One), unlawful acquisition (Count Two), attempted monopolization (Count Four), horizontal agreements to fix prices (Count Five), and horizontal agreement to divide markets (Count Six) proceed against Defendants to the extent they rest on the market for hospital-only anesthesia services.

It is so ORDERED.

SEP 3 0 2026

Date

The Honorable Alfred H. Bennett
United States District Judge